Daniel B. Snyder (CA Bar No. 207824)
Gregory A. Cade (subject to pro hac admission)
Kevin B. McKie (subject to pro hac admission)
Gary Anderson (subject to pro hac admission)
ENVIRONMENTAL LITIGATION GROUP PC
2160 Highland Ave S, Ste 200
Birmingham, AL 35205
T: (205) 328-9200
F: (205) 328-9456
dsnyder@elglaw.com
GregC@elglaw.com
kmckie@elglaw.com
Gary@elglaw.com

Christopher Cueto (subject to pro hac admission)
Lloyd Cueto (subject to pro hac admission)
James E. Radcliffe (subject to pro hac admission)
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
ccueto@cuetolaw.com
lmcueto@cuetolaw.com
jradcliffe@cuetolaw.com

Attorneys for Plaintiffs and
Proposed Class Counsel

# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VANESSA GUTIERREZ, *on her own behalf and on behalf of her minor children, Al. D. and An. D.*; JEREMY MILLER and MARIANNA MILLER, *on their own behalves and on behalf of their minor children, P.M. and L.M.*; LEONARD MILLER; THERESA MILLER; *and collectively on behalf of themselves and all others similarly situated,*<br><br>        Plaintiffs,<br><br>    vs.<br><br>ZINUS INC.,<br><br>        Defendant. | Case No.: _____<br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

NOW COME VANESSA GUTIERREZ, *on her own behalf and on behalf of her minor children, Al. D. and An. D.*; JEREMY MILLER and MARIANNA MILLER, *on their own behalves and on behalf of their minor children, P.M. and L.M.*; LEONARD MILLER; THERESA MILLER; *collectively on behalf of themselves and all others similarly situated*, by and through counsel, and for their Class Action Complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure, allege as follows:

## NATURE OF ACTION

### A. Background

1.     This is a consumer class action on behalf of all individuals in the United States who purchased and/or used a mattress containing fiberglass manufactured and/or distributed by Defendant Zinus Inc. ("Zinus") ("the Affected Mattresses").

2.     The undersigned law firms represent over two thousand individuals from across the United States who have been injured by an Affected Mattress, over a hundred of which reside in California alone.

3.     Zinus is a global eCommerce mattress and furniture manufacturer that specializes in manufacturing "bed-in-a-box mattresses" ("Box Mattress") it then sells on online marketplaces – such as Amazon – and through "big box" retailers—such as Walmart and Target—rather than through traditional furniture or mattress stores. A Box Mattress is generally a foam mattress compressed into a box for shipment purposes and is usually less expensive than purchasing a traditional mattress.

4.     Box Mattresses, like traditional not-in-a-box mattresses, contain a fire-retardant sock or sleeve ("FR Sleeve") that must meet the Open Flame Resistance Standards in 16 C.F.R. § 1633.  FR Sleeves can be made from different fibers including, Ammonium salt treated

cellulosic fiber, fiberglass fiber, modacrylic fiber, and silica-embedded rayon fiber. Zinus uses fiberglass, also known as glass fibers, in all its Box Mattresses' FR Sleeves are an inexpensive flame retardant. However, glass fibers from the FR Sleeve routinely break then seep through the inexpensive, porous outer cover of the mattress and release into the surrounding environment causing skin and eye irritation, breathing issues, and/or property damage ("The Defects").

5.    All the Affected Mattresses contain a removable outer cover ("Outer Cover") equipped with a zipper and inadequate warning labels. Once the Outer Cover is unzipped and removed, the defective FR Sleeve is exposed which allows the glass fibers to then release into the surrounding environment potentially causing serious injuries and/or property damage.

6.    The Defects also include the FR Sleeve not meeting the Open Flame Resistance Standards. The FR Sleeve made of glass fibers begins as a long continuous filament fiber.

7.    When the continuous fibers of the FR Sleeve break, the Affected Mattresses pose two serious safety issues: (1) the FR Sleeves lose their fire-retardant capabilities because the fibers are no longer continuous; and (2) the broken fibers easily disperse from the FR Sleeves into the surrounding environment causing personal injuries and/or property damage.

8.    On average, FR Sleeves not containing glass cost about five dollars more than the FR Sleeves containing glass fibers. Upon information and belief, Zinus chooses not to pay this extra cost to increase its profits while knowing its current Affected Mattresses and/or glass-containing FR Sleeves are defective.

**B.  News Reports Concerning the Affected Mattresses Releasing Fiberglass**

9.    The Affected Mattresses are sold in retail stores throughout the United States. News outlets from across the United States have reported on how the Affected Mattresses have

released dangerous glass fibers into the environment injuring adults, children, and causing thousands of dollars of property damage.

10.     In 2017, CBS 5 News in Arizona ("CBS 5") reported on an Affected Mattress releasing significant amounts of glass fibers into a home causing extensive property damage, health problems for children living in the home, and forcing the family living in the home to vacate it because of the glass fiber contamination.[1] Homeowner Nikki McKee reported to CBS 5 that a Spa Sensations memory foam mattress with a removable Outer Cover made by Zinus released glass fibers into her home causing her children to experience skin irritation and respiratory issues.[2]

11.     In February 2020, News 4 in San Antonio, Texas ("News 4") reported on how Brittney Rodriguez followed the "cleaning instructions for her mattress cover" which then caused her Affected Mattress, a Spa Sensations mattress made by Zinus, to release extremely large amounts of glass fibers into her home causing extensive property damage and health issues for her and her children.[3]

12.     On January 24, 2022, a television news story entitled "Hidden Hazards" was published by KMOV4 in St. Louis, Missouri documenting "the danger lurking in your mattress."[4] This featured news story outlined the tragic events Amanda Chandler and Robert Durham experienced when their child's Affected Mattress released extremely large amounts of dangerous glass fibers which then caused serious injuries to their family of five and "destroy[ed]

---

[1] *Family forced to leave home over fiberglass mattress cover*, azfamily powered by 3TV and CBS5AZ (June 15, 2017), https://www.youtube.com/watch?v=jO3Pq6qFj_s (last visited July 1, 2022).
[2] *Id.*
[3] Darian Trotter, *'I just don't know what to do.' Why it'll cost $4300 to clean her home*, NEWS4SA (February 18, 2020), https://news4sanantonio.com/news/local/i-just-dont-know-what-to-do-why-itll-cost-4300-to-clean-her-home-02-19-2020 (last visited July 1, 2022).
[4] Lauren Trager, *News 4 Investigates: The danger lurking in your mattress,* KMOV News 4 (January 24, 2022), https://www.kmov.com/2022/01/25/news-4-investigates-danger-lurking-your-mattress/ (last visited July 1, 2022).

thousands of dollars of stuff and [their] whole life." *Id.* Due to the serious risks associated with the glass fiber contamination, it forced this family of five from their home for months.

**C. Consumer Complaints to the Consumer Product Safety Commission**

13.    Several consumers submitted complaints with the Consumer Product Safety Commission ("CPSC") regarding Affected Mattresses allegedly leaking glass fibers.

14.    On June 17, 2015, a consumer submitted a complaint with the CPSC concerning a Zinus Spa Sensations mattress.[5]

15.    The report summary indicates that "A 53 YOM, a 52 YOF & their 9 year old daughter experienced itching on their body & also suffered respiratory issues. The mesh that covered the mattress cover was coming apart. She found that fire retardant layer around the foam was causing the itching on their body."[6]

16.    Zinus allegedly equipped this consumer's Affected Mattress with a tag which instructed the user to clean the Outer Cover by placing it in a washing machine then dry it on a gentle air cycle.[7]

17.    Zinus allegedly equipped this consumer's Affected Mattress with a tag which instructed the user to clean the FR Sleeve by using a damp cloth and soap.[8]

18.    On May 3, 2022, a consumer submitted a complaint with the CPSC concerning multiple Zinus mattresses.[9]

---

[5] Consumer Product Safety Commission, *Incident Report Details*,
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1491420 (last visited July 1, 2022).
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Consumer Product Safety Commission, *Incident Report Details*,
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3690438 (last visited July 1, 2022).

19. The report indicates that multiple Affected Mattresses shed glass fibers from the FR Sleeve contaminating their home and causing health issues for their minor children.

20. On December 16, 2016, a consumer submitted a complaint with the CPSC concerning a Zinus Spa Sensations mattress.[10]

21. The report summary indicates that the glass "fibers … went everywhere, on the floor, carpet, stick to other clothes, etc. They caused irritation in the lungs and itchiness on the skin."[11]

**D. Amazon Reviews Reporting Affected Mattresses Releasing Fiberglass**

22. Zinus sells its Green Tea 12-Inch Memory Foam Mattress ("Green Tea Mattress") on Amazon.com.[12] This model is an Affected Mattress that releases glass fibers which can cause injuries, property damage, and/or cause the mattress to lose its Open Flame Standard. To date, this model has over 60,000 ratings on Amazon which range from one star to five-star ratings.[13] As of September 23, 2020, one of the three top featured Amazon review for this Affected Mattress is from December 25, 2018 and entitled "DO NOT UNZIP MATTRESS COVER!!!!" and Amazon reports "23,156 people found this [review] helpful."[14] The "Verified Purchase[r]" who authored the review includes in the review that he "**called Zinus and they told me 'yes we are aware and that's why it says not to remove the cover.' Then why did you put a zipper**

---

[10] Consumer Product Safety Commission, *Incident Report Details*, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3287952 (last visited July 1, 2022).
[11] *Id.*
[12] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress*, https://www.amazon.com/Zinus-Memory-Green-Mattress-Queen/dp/B00Q7EPSHI (last visited July 1, 2022).
[13] *Id.*
[14] *Id.*

**on it!?!?!?"**[15] The review also states that "[w]e hired Servpro to help filter out all of the fiber glass particles in the air."[16]

23.    Dozens of other verified Amazon purchasers gave Zinus' Green Tea Mattress a one-star rating ("Review") because the mattress released large amounts of glass fibers causing serious injuries and/or extensive property damage.[17]

24.    A verified purchaser authored a Review on December 22, 2017 and it states, in part:

> "I decided To take the cover off to possibly wash it.. BAD IDEA!!!!! The layer underneath the cover (which can't be washed and should NOT be taken off) is FIBERGLASS!!! Says right on the tag!!??? In a bed??? **Sorry but I do not think that can be healthy to be breathing in every night! I will not sleep on the bed, amazon was great with my refund."**[18]

25.    A verified purchaser authored a Review on September 12, 2018 and it states, in part:

> I've only had the mattress for a year now and I started to notice that my clothes and sheets were making me really itchy. I wasn't sure what the problem was for a couple of months and thought it had something to do with my detergent options. But after plenty of research and investigation, **I noticed the tiny shiny shards of fiber glass on my sheets.** Then I Inspected the mattresses outer covering and it had fiberglass all over it! Now I have to decontaminate all of my clothing and furniture in my home!"[19]

26.    A verified purchaser authored a Review on October 22, 2018 and it states:

> This mattress has fiberglass and I had a really bad experience with it. I removed the cover to wash it and now its everywhere, in every single cloth in the house and it itches like crazy. **I have to throw out the bed, bedsheet, pillows and all of my cloths. It is a really bad experience.**[20]

---

[15] *Id.*
[16] *Id.* (emphasis added).
[17] *Id.*
[18] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added)
[19] *Id.* (emphasis added); *See* Exhibit A.
[20] *Id.* (emphasis added); *See* Exhibit A.

27.     A verified purchaser authored a Review on February 14, 2019 and it states, in part:

> Caution: This product is made of glass fibers! I did not know that until I saw the glass fibers in my bedroom! This should have been advertised, but I could not find it anywhere. **I would not have purchased it if I knew I would be sleeping on fiberglass.**[21]

28.     A verified purchaser authored a Review on February 21, 2019 and it states, in part, "I see multiple reports that the mattress is sheathed in fiberglass under the protective cover **(which comes with a zipper- implying it's removable when clearly it's not if there's fiberglass underneath).**"[22]

29.     A verified purchaser authored a Review on March 18, 2019 and it states:

> DO NOT TAKE THE COVER OFF THIS MATTRESS. There is fiberglass in this mattress. I made the mistake of taking the cover off to wash it and the fiberglass got in all our clothes and linens and won't come out. **It is costing me hundreds of dollars to replace clothes and linens. A nightmare!!!**[23]

30.     A verified purchaser authored a Review on April 27, 2019 and it states:

> PLEASE STAY AWAY FROM THIS MATTRESS! There is FIBERGLASS UNDERNEATH THE COVER WHICH IS CENTAMETERS FROM YOUR FACE ! **There is FIBER GLASS ON MY CLOTHES,ON MY SKIN & ON MY BABY'S CRIB! You don't even have to open the cover after a while it start protruding through!**WHAT A MESS . I Don't EVEN KNOW WHERE TO START [sad face emoji]."[24]

31.     A verified purchaser authored a Review on May 19, 2019 and it states, in part:

> Bought this 2 years ago, my husbands asthma started acting up. We thought it was because of the condo we moved into the same time we bought the mattress . . . **Had I known there was fiberglass in the**

---

[21] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit A.
[22] *Id.* (emphasis added); *See* Exhibit A.
[23] *Id.* (emphasis added); *See* Exhibit A.
[24] *Id.* (emphasis added); *See* Exhibit A.

**mattress beforehand, I wouldn't have purchased this. I know it's there to make the mattress flame retardant but I'd rather my bed burst into flames than have fiberglass lining it.**[25]

32.    A verified purchaser authored a Review on May 30, 2019 and it states, in part:

I've been a Prime member for a long time and have never received a product that I felt a real need to write a negative review for UNTIL I received this Zinus mattress. Long story short: **this mattress shreds fiberglass THROUGH THE COVER (you don't have to remove the cover for this to happen). It's a health risk and should be recalled and banned from being sold in the US!**[26]

33.    A verified purchaser authored a Review on June 6, 2019 and it states, in part:

I had to wash the cover when my dog decided to throw up on my bed and I couldn't spot clean it. The cover looked horible [sic] after handwashing it (rips and pills everywhere, and **after I put it back on I started finding shiny fibers on every surface in my room (billions, not just a few here and there)**.[27]

34.    A verified purchaser authored a Review on August 20, 2019 and it states, in part, "after reading the TAG sewed on the mattress I realized it was 61% GLASS FIBERS! **Seriously sleeping on fiber glass!! NOT Me!** Their description made the bed sound "Healthy"..Sent them back and they don't want to give me a full refund for New Mattresses shipped back as they requested."[28]

35.    A verified purchaser authored a Review entitled "A pin hole is enough to destroy your life" on August 21, 2019 and it states, in part:

That's when I noticed my sheets were sparkling. Whelp – lucky me. The second mattress had a very small hole in the cover. Maybe it was there when I bought it, maybe I nicked it taking it out of the package, I dunno. Doesn't really matter. **Because of that tiny hole the mattress has somehow managed to eject a TON of glass fibers. This is why I feel**

---

[25] *Id.* (emphasis added); *See* Exhibit A.
[26] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit A.
[27] *Id.* (emphasis added); *See* Exhibit A.
[28] *Id.* (emphasis added); *See* Exhibit A.

**compelled to review. Yes the cover says don't remove but I did not remove anything.**[29]

36.    A verified purchaser authored a Review on September 19, 2019 and it states, in part, "The very thin cover ended up ripping apart exposing the fiber glass. This is very dangerous and creates permanent damage in your lungs and gets everywhere."[30]

37.    A verified purchaser authored a Review on December 4, 2019 and it states, in part:

> This WOULD be the perfect mattress! Except for the fact that it has FIBERGLASS as the fire resistant under-cover. I am extremely disappointed that this is even a thing that's allowed. **It is extremely dangerous for your health, and after some time of being used, the fiberglass will slowly make it's way out of the top cover getting all over your sheets, house, and you!**[31]

38.     A verified purchaser authored a Review on December 29, 2019 and it states, in part, "This mattress is encased in fiberglass fabric underneath the outermost cover. The outer cover is flimsy and does not do a good job of keeping the harmful fiberglass filaments contained, even when fully intact."[32]

39.    A verified purchaser authored a Review on February 3, 2020 and it states, in part: "Please be aware and pay heed to all one star reviews posted here. **The fiber glass is real thing which you will never be aware of until and unless you beam a flashlight on mattress** surface area which are subjected to STRESS."[33]

40.    A verified purchaser authored a Review on March 16, 2020 and it states, in part:

> About three weeks ago I started being bothered by **intense itching on my shoulders and trunk, with welts appearing wherever I scratched. It took me a couple of weeks to figure out that what I felt were sharp,**

---

[29] *Id.* (emphasis added); *See* Exhibit A.
[30] *Id.* (emphasis added); *See* Exhibit A.
[31] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit A.
[32] *Id.* (emphasis added); *See* Exhibit A.
[33] *Id.* (emphasis added); *See* Exhibit A.

**tiny, fiberglass-like filaments that took almost two months to work their way through the cover, mattress pad and sheets**.[34]

41.     A verified purchaser authored a Review on April 18, 2020 and it states, in part:

**Mattress is comfortable for the price but no where does the packaging or product listing include a warning that if you remove the mattress covering, you will contaminate you're [sic] Room and possibly entire house with fiberglass**. . . Zinus may say not to take mattress cover off but it literally has a zipper as if your [sic] able to take off and clean like a normal person would assume yet to only find out this is exactly not what your [sic] sup[posed to do. **HEY ZINUS, TAKE THE ZIPPER OFF!**[35]

### PARTIES

42.     Plaintiff Vanessa Gutierrez ("Gutierrez") is an adult citizen and resident of Sacramento, California; and her minor children Al. D. and An. D. are also citizens and residents of Sacramento, California.

43.     Plaintiffs Jeremy Miller and Marianna Miller are adult citizens and residents of Gillette, Wyoming; and their minor children P.M. and L.M. are also citizens and residents of Gillette, Wyoming.

44.     Plaintiffs Leonard Miller and Theresa Miller are adult citizens and residents of Gillette, Wyoming.

45.     Zinus, Inc., is a California corporation with its principal place of business in Tracy, California. Zinus is in the business of designing, testing, manufacturing, selling, and supporting the mattresses subject to this Complaint. Zinus does business nationwide. Upon information and belief, Zinus, Inc., is a subsidiary of Zinus, Inc., a Republic of Korea company publicly traded on the Korea Composite Stock Price Index.

### JURISDICTION AND VENUE

---

[34] *Id.* (emphasis added); *See* Exhibit A.
[35] *Id.* (emphasis added); *See* Exhibit A.

46.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs. Members of the proposed Classes are citizens of States different from Defendant. This Court also has supplemental jurisdiction over the remaining claims.

47.     This Court has personal jurisdiction over Zinus because Zinus is a registered California corporation, is a citizen of California, is headquartered in California, has its principal place of business in California, conducts business in California and has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California through the promotion, sale, marketing and distribution of its mattresses, to render the exercise of jurisdiction by this Court proper.

48.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Zinus resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Zinus Mattresses Containing Glass Fibers

49.     This lawsuit concerns all Zinus mattresses containing FR Sleeves comprised of glass fibers – the Affected Mattresses.

50.     The Affected Mattresses are equipped with an inner cover FR Sleeve that contains significant amounts of glass fibers. The FR Sleeves comprised of glass fibers begin as a long continuous filament fiber. Though over time, the long filament fibers break causing the FR Sleeve to shred glass fibers. Once the continuous glass fiber filaments in the FR Sleeve break the Affected Mattresses do not meet the Open Flame Standards of § 1633.

51.    The glass fibers then seep through the inexpensive, porous Outer Cover into the surrounding environment. The glass fibers can also escape when users remove the Outer Cover by unzipping it. Many of the Affected Mattresses, including Spa Sensations models, instruct users to remove the Outer Cover to clean it and use soap and water to clean the inner FR Sleeve.

52.    Some Affected Mattresses instruct users "DO NOT REMOVE COVER," however, it is unclear whether "COVER" relates to the removable Outer Cover or Inner Cover FR Sleeve. Zinus equips the Outer Cover with a zipper inviting the user to remove it.[36] Each day in the United States, millions of individuals use zippers to open pants, jackets, coats, shoes, backpacks, luggage, mattress covers, etc. Given how widely people in our society use zippers, attaching one to an object invites opening that object.

53.    Additionally, the instruction "DO NOT REMOVE COVER" is wholly inadequate as a warning because it fails to inform the user of the risks associated with removing the Outer Cover, which include injuries and/or property damage.

54.    With some Outer Covers, Zinus equips the Outer Cover with a zipper but removed the zipper pull tab and stitched over the location of the slider body at the end of the closed zipper.

55.    These instructions and/or alterations, or lack thereof, expose the user and surrounding environment to dangerous glass fibers. Once in the environment, these glass fibers easily disperse through the air, and can travel throughout a home via HVAC systems, vents, doorways, windows, etc. The glass fibers attach to essentially anything they touch. This includes

---

[36] ThoughtCo., *The History of the Zipper*, https://www.thoughtco.com/history-of-the-zipper-4066245 ("Today the zipper is everywhere and is used in clothing, luggage, leather goods and countless other objects." (last visited on July 5, 2022).

human skin, animals, HVAC systems, clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, bedding, wood, and plastic.

56.    Exposure to glass fibers may cause eye, skin, and upper respiratory tract irritation. Glass fibers that reach the lower part of a person's lungs increases the chances of adverse health effects. According to state agencies some possible health effects may include rashes from fibers becoming embedded in the skin, eye irritation, soreness in the nose and throat with respiratory ailments, and stomach irritation.

57.    The glass fibers can also cause significant property damage by attaching to essentially anything including HVAC systems, washer and dryers, clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, bedding, wood, and plastic. Once the glass fibers are embedded into fabric like clothes, towels bedding, couches, it is virtually impossible to remove all the glass fibers which forces the owner to discard the contaminated item.

58.    The cost of cleaning a home exposed to glass fibers may cost thousands to possibly tens of thousands of dollars.[37] Experts recommend occupants vacate a home exposed to glass fibers until it is professionally cleaned.[38]

**B. Plaintiffs' Experience with Affected Mattresses**

*Vanessa Gutierrez and minors Al. D. and An. D.*

59.    Ms. Gutierrez purchased a Zinus Memory Foam 12-inch mattress in California.

60.    The Mattress Tag failed to warn the user not to remove the removable outer cover, that removing the removable outer cover may expose the user to glass fibers, that exposure to glass fibers may lead to serious injuries and/or property damage, that the removable

---

[37] The Report.
[38] *Id.*

Outer Cover was not washable, and, not to stand, sit, lay, or jump on the Affected Mattress after removing the removable Outer Cover. Additionally, the tag failed to warn that glass fibers could escape the Affected Mattress during ordinary use.

61.    Without removing the outer cover, the Affected Mattress released glass fibers into the apartment of Ms. Gutierrez and her two minor children, Al. D. and An. D.

62.    The release of glass fibers into the surrounding environment caused personal injury to Ms. Gutierrez and her children including, but not limited to, rashes, itchy skin, skin sores, coughing, breathing difficulties, eye problems, and loss of sleep.

63.    The medical issues were so severe that Ms. Gutierrez had to take her infant daughter to multiple medical appointments to obtain treatment.

64.    Additionally, the release of glass fibers from the Affected Mattress caused widespread glass fibers contamination of the living space and personal property. Personal property was discarded worth thousands of dollars as a result of the contamination. This included clothing, sheets, pillows, blankets, towels, rugs, furniture, vacuum cleaner, and items purchased for the infant daughter.

65.    Furthermore, the widespread glass fiber contamination from the Affected Mattress caused Ms. Gutierrez to expend significant resources in attempting to clean and decontaminate her living space of glass fibers.

66.    The glass fiber contamination was so severe Ms. Gutierrez was forced to relocate herself and two minor daughters in an effort to escape the health effects of the contamination. She incurred significant expense in temporary housing, meal costs, and lost deposits.

67.    As a result of the glass fiber contamination, Ms. Gutierrez was forced to miss multiple days of work, resulting in lost wages.

68.     Ms. Gutierrez recently discovered the Affected Mattress was the source of the shards of glass and now seeks damages herein related to the glass fiber release from the Affected Mattress.

*Jeremy Miller, Marianna Miller, Leonard Miller, and Theresa Miller, and minors P.M and L.M.*

69.     In or around 2019, Plaintiffs Jeremy Miller and Marianna Miller, who are residents of Wyoming, purchased a Zinus Green Tea mattress.

70.     Jeremy and Marianna Miller were living in a home with their children and pets that was owned by Jeremy's parents, Leonard and Theresa Miller.

71.     Jeremy and Marianna Miller removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

72.     Glass fibers from the Zinus mattress released causing them, their children and their pets to suffer personal injuries and damage to their personal property.

73.     Jeremy and Marianna Miller had to move themselves, their two young children, four dogs and two cats out of the home and into Leonard and Theresa Miller's two-bedroom apartment because of the glass fiber contamination.

74.     As a result of the contamination, Jeremy and Marianna Miller were forced to remediate their home, discard their personal property and pay for replacements which depleted their savings at the onset of the pandemic.

75.     The economic impact of cleaning the home and replacing their belongings forced Jeremy, Marianna, their two children, four dogs and two cats to live with Leonard and Theresa Miller until the remediation of the home was complete.

76.     The contamination caused by the Zinus mattress disrupted the lives of Jeremy, Marianna, their children, Leonard and Theresa Miller and diminished their quality of life.

**C. Personal Injuries**

77.    The glass fibers from the Affected Mattress caused Plaintiffs and their families to experience extreme pain and suffering. Some of Plaintiffs' and their family's injuries include rashes, itchy skin, skin sores, coughing, breathing difficulties, eye problems, and loss of sleep. Currently, the severity of Plaintiffs' and their families' injuries is unknown because it is likely each individual inhaled significant amounts of glass fibers.

**D. Property Damage**

78.    The glass fibers from the Affected Mattresses caused significant and potentially irreversible damage to Plaintiffs' home and personal property. These glass fibers contaminated Plaintiffs' homes including such things as clothing, sheets, pillows, blankets, towels, rugs, furniture, washer, dryer, vacuum cleaner, children's toys, baby items, and home decor.

**E. Zinus Knew or Should Have Known of the Defects Since as Early as 2015**

79.    On June 17, 2015, a consumer filed an incident report with the CPSC concerning a Zinus Spa Sensations mattress that allegedly leaked glass fibers which caused a family to suffer personal injuries and property damage.[39]

80.    The CPSC then sent the incident report to Zinus on July 22, 2015.

81.    Amazon reviews concerning Zinus' mattresses releasing dangerous glass fibers date back to 2017.[40]

82.    In the Summer of 2019, a consumer posted a direct message entitled, "Can I wash my Zinus mattress cover?" to Zinus's website.[41] Zinus responded by stating the following: "Our

---

[39] Incident Report, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1491420 (last visited October 26, 2020).

[40] *See* Exhibit A.

[41] Zinus, *Can I wash my Zinus mattress cover?*, https://support.zinus.com/hc/en-us/articles/360000223232-Can-I-wash-my-Zinus-mattress-cover- (last visited March 8, 2020).

mattresses are self-contained wonder delivery systems! Removing the mattress cover could jeopardize that system. The mattress cover isn't washable, and removing it could inhibit the fire safety barrier, so please always leave the cover on."[42]

83.    The above statement fails to mention terms like fiberglass, glass fibers, or contains glass. The above statement fails to mention the potential consequences which may occur if the removable outer cover is removed. The above statement fails to explain that "removing [the cover] could inhibit the fire safety barrier" which then may cause thousands of glass fibers to release from the mattress potentially resulting in serious injuries and/or property damage. The above statement fails to mention why Zinus continued to equip the Affected Mattresses with Outer Covers with zippers when users were not to remove said covers.

## DAMAGES

84.    The Defects and Zinus' conduct to misrepresent and conceal them caused damage to Plaintiffs and the Class in at least three ways, as alleged in detail below. First, members of the Class would not have purchased the Affected Mattresses at all, or would have paid less for them, had the Defects been disclosed to them. Each of these injuries has already occurred. None of the injuries requires any Class members' mattresses to release glass fibers. Second, members of the class personally injured by the glass fibers contained within the Affected Mattresses. And third, members of the class who suffered property and/or real estate damage from the glass fibers contained within the Affected Mattresses. Members who suffered property and/or real estate damage from glass fibers contained within the Affected Mattresses seek the costs of remediation and/or costs to replace contaminated property.

## CLASS ACTION ALLEGATIONS

---

[42] *Id.*

85.     Given Plaintiffs' experience with the Affected Mattress, combined with the thousands of individuals the undersigned represents with similar claims against Zinus, the CPSC complaints, and Amazon reviews, Plaintiffs therefore bring this action on behalf of the following classes: (1) a proposed nationwide class of consumers who purchased the Affected Mattresses; (2) a proposed nationwide class of adults injured by glass fibers from the Affected Mattresses; (3) a proposed nationwide class of minors injured by glass fibers from the Affected Mattresses; (4) a proposed nationwide class of individuals who suffered personal property damage by glass fibers from the Affected Mattresses; and (5) a proposed nationwide class of individuals who suffered real estate property damage by glass fibers from the Affected Mattresses.

86.     The Classes' claims all derive directly from a single course of conduct by Zinus. Zinus has engaged in uniform conduct toward the class members. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions among individual Class members. The operative facts on these subjects are the same for all Class members. The same legal standards govern each Claim for Relief asserted by the respective Classes. Additionally, the state law claims share the same legal standards and elements of proof across states, thus facilitating the certification of a National Class.

87.     Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

**A. The Consumer Class**

88.     Plaintiffs bring this action and seeks to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalf and on behalf of a **Nationwide Class** defined as follows:

> All persons who purchased an Affected Mattress in the United States, which was manufactured and/or sold by Zinus and contained glass fibers.

**B. The Adult Personal Injury Class**

89.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalf and on behalf of a **Nationwide Class** defined as follows:

> All adults in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**C. The Minor Personal Injury Class**

90.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalf and on behalf of a **Nationwide Class** defined as follows:

> All minors in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**D. The Personal Property Damage Class**

91.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalf and on behalf of a **Nationwide Class** defined as follows:

> All persons in the United States who suffered personal property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**E. The Real Estate Property Damage Class**

92.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalf and on behalf of a **Nationwide Class** defined as follows:

> All persons in the United States who suffered real estate property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

93.     The Classes and their members are sometimes referred to herein as the "Class" or "Classes."

94.     Excluded from the Classes are Zinus; any affiliate, parent, or subsidiary of Zinus; any entity in which Zinus has a controlling interest; any officer, director, or employee of Zinus; any successor or assign of Zinus; counsel for Plaintiffs or anyone employed by counsel for Plaintiffs in this action and their immediate families; any Judge to whom this case is assigned and his or her immediate family and staff.

95.     This action has been brought and may properly be maintained on behalf of Classes proposed above under Federal Rule of Civil Procedure Rule 23.

96.     **Numerosity.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Based on the thousands of clients the undersigned represents with claims against Zinus and the 100,000 plus Amazon Reviews concerning Zinus' Green Mattress (which is only one model of the Affected Mattresses), there are thousands of Affected Mattresses nationwide. Individual joinder of all Class members is impracticable.

97.     Each of the Classes is ascertainable because its members can be readily identified using sales records, production records, and other information kept by Defendant or third parties in the usual course of business and within their custody or control. Plaintiffs anticipate providing appropriate notice to each certified Class in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A)

and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

98. **Existence of common questions.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members, as is required by Fed. R. Civ. P. 23(a)(2). These common questions include:

a. Whether Zinus violated the Magnuson Moss Warranty Act.

b. Whether the Affected Mattresses comply with 16 C.F.R. § 1633 over the life of the mattress.

c. Whether the Affected Mattresses comply with 16 C.F.R. § 1633 if the continuous glass fibers break.

d. Whether the Outer Cover on the Affected Mattresses constitutes a defect.

e. Whether the Outer Cover on the Affected Mattresses constitutes a safety-related defect.

f. Whether the zipper on the Outer Cover of the Affected Mattresses constitutes a defect.

g. Whether the zipper on the Outer Cover of the Affected Mattresses constitutes a safety-related defect

h. Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a defect in the mattress system.

i. Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a safety-related defect in the mattress system.

j. Whether the Affected Mattresses' attached tags are inadequate to sufficiently warn the user of associated dangers.

k.  Whether the Defects constitutes material facts that consumers might consider in making their purchasing decisions.

l.  Whether Zinus fraudulently concealed these Defects.

m. Whether Zinus fraudulently concealed other defects.

n.  Whether Zinus misrepresented that the Affected Mattresses were safe.

o.  Whether Zinus engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose the Defects.

p.  Whether Zinus violated consumer protection statutes, and if so, what remedies are available.

q.  Whether Zinus be declared responsible for notifying all Class members of the Defects.

r.  Whether Zinus is liable under various theories of state liability.

s.  Whether Zinus is liable to the Class for damages and/or penalties because of their knowledge, conduct, action, or inaction; and,

t.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or preliminary and/ or permanent injunction.

99.  **Typicality.** Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs' Affected Mattress contained the same Defects found in all other Affected Mattresses.

100.  **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent and are capable and willing to participate in this litigation. Plaintiffs have retained counsel competent

and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel. As such, they meet the requirements of Fed. R. Civ. P. 23(a)(4).

101. **Declaratory and Injunctive Relief.** Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

102. **Predominance and Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The common questions listed above are the central legal and factual issues in the litigation. The injuries suffered by each Class member, while meaningful on an individual basis, are not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Defects, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

103. In the alternative, the Class may be certified because:

    a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class

members which would establish incompatible standards of conduct for Defendant; and/or

b.   The prosecution of separate actions by individual Class members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## **CLAIMS FOR RELIEF APPLICABLE TO THE CLASSES**

### **COUNT ONE – VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (BREACH OF IMPLIED WARRANTY)**

104.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

105.   The Class Plaintiffs bring this Count against Defendant on behalf of members of the Classes.

106.   The Affected Mattresses are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

107.   Plaintiffs and the Class are the buyers of the Affected Mattresses and/or the Affected Mattresses caused Plaintiffs and the Class to suffer consequential property damage. They are therefore "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

108.   Defendant is a "supplier" and/or "warrantor" within the meaning of the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(4)-(5). Defendant is engaged in the business of making consumer products directly or indirectly available to consumers and are obligated under an implied warranty to the Plaintiffs and Class members.

109.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a supplier or warrantor to comply with a written or implied warranty.

110.    Defendant owes the Plaintiffs and other Class members an implied warranty of merchantability in connection with the purchase of their mattresses. As part of the implied warranty of merchantability, Defendant warrants that the Affected Mattresses are fit for their ordinary purpose as mattresses in safe condition and substantially free from defects.

111.    As described in more detail above Defendant breached those implied warranties and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Affected Mattresses share the Defects. These design defects make the Affected Mattresses unsafe by potentially exposing the user to dangerous glass fibers.

112.    Any efforts by Defendant to limit the implied warranties in a manner that would exclude coverage of the Affected Mattresses is unconscionable, and any such effort to disclaim or otherwise limit liability for the Affected Mattresses is null and void.

113.    Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants, on one hand, and Plaintiffs and the other Class members, on the other.

114.    Plaintiffs and each of the Class members are intended third-party beneficiaries of contracts between Zinus.

115.    Plaintiffs and the Class members were not required to give notice to Defendant or to afford Defendant an opportunity to cure their breaches of the implied warranties. Defendant had actual knowledge, or should have known, or were reckless in not knowing, of the Defects, but Defendant nonetheless failed to correct the Defects prior to the filing of Plaintiffs' Class Action Complaint, thus making formal pre-suit notice unnecessary and futile. Even if notice

were deemed to be required, Plaintiffs may proceed prior to affording Defendant a reasonable opportunity to cure its breaches because class plaintiffs would not be obligated to provide notice and opportunity to cure until the Court determines their representative capacity pursuant to Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 2310(e). Alternatively, Zinus has actively defended litigation in other federal districts in which they were put on notice of the alleged defects and resulting injuries, thereby providing adequate pre-suit notice.

116.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.

117.    Plaintiffs and the Class members seek all damages permitted by law, in an amount to be proven at trial.

118.    Plaintiffs and the Class members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Defendant had actual knowledge, or should have known, or were reckless in not knowing, steps taken by Defendant were inadequate to render the Affected Mattresses safe and merchantable. Plaintiffs thus requests payment of all fees and costs necessary to repair the Defects. Plaintiffs and other Class members further request re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Defects.

119.    The rights of Plaintiffs and other Class members to recover these expenses as an equitable manner, to put them in the place that they would have been but for Defendants' conduct, presents a common question of law. Equity and fairness require the establishment by Court decree and administration under Court supervision of a program funded by Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

120.    Further, based on the Defendants' continuing failures to fix the known dangerous Defects, Plaintiffs and the other Class members seek as equitable relief under 15 U.S.C. § 2310(d)(1): (a) a declaration that Defendant has not remedied the Defects; and (b) injunctive relief in the form of judicial supervision of a process requiring Defendant to fully repair the Defects or to refund to Class members the purchase prices of their Affected Mattresses.

**COUNT TWO – STRICT LIABILITY (FAILURE TO WARN)**

121.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Classes and under the common law of strict liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

122.    Zinus engaged in the design, manufacturing, marketing, and sales of the Affected Mattresses and knew or should have known, the Affected Mattresses could release glass fibers resulting in contamination of the surrounding environment, thereby causing injuries and property damage to Plaintiffs.

123.    Zinus knew or should have known of the adverse impacts exposure to its glass fibers would have on people and property.

124.    Zinus knew or should have known of the persistence and high mobility of glass fibers once released into an environment, and the foreseeable risk that its glass fiber-containing mattresses could discharged or released said fibers into an environment.

125.    Zinus failed to provide warnings or instructions sufficient to notify the users and/or public and/or Plaintiffs of the dangers inherent in Zinus' glass fiber-containing mattresses.

126.    Zinus failed to provide proper and adequate notice or instruction regarding the dangers of their Affected Mattresses to human health and property rendering Zinus' glass fiber-containing mattresses unreasonably dangerous for the purposes intended and promoted by Zinus.

127.    Zinus' duty to warn is and was a non-delegable duty.

128.    Zinus also intentionally, recklessly, and without regard for human life and property covered up, suppressed, withheld, obfuscated, minimized, and otherwise misrepresented the facts they had with regard to its glass fiber-containing mattresses as such relate to the persistence and high mobility of glass fibers in an environment.

129.    This failure to warn or adequately instruct regarding the dangers associated with use of Zinus' Affected Mattresses directly and proximately caused harm and damages to Plaintiffs.

130.    By causing glass fiber contamination and the resulting impact to Plaintiffs' health and property, Zinus is strictly liable.

131.    The failure to warn and deceptive conduct of Zinus, as to the public, and retailers of the Affected Mattresses, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against Zinus for failure to warn.

**COUNT THREE – STRICT LIABILITY (DESIGN DEFECT)**

132.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Classes and under the common law of strict liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

133.    Zinus, herein, at all times relevant, was in the business of the design, manufacture, sale, and distribution of glass fiber-containing mattresses, and/or the foregoing use of which created a risk of exposure of glass fibers to the public as part of the foreseeable use of the Affected Mattresses.

134.    Zinus designed, manufactured, marketed, and sold defective products that were unreasonably dangerous for their intended use. Zinus either knew of the dangers contained in the Affected Mattresses and chose to ignore such dangers or should have known such dangerous existed.

135.    When Zinus placed its glass fiber-containing mattresses into the stream of commerce, the mattresses were defective, unreasonably dangerous, and not fit, suitable, or safe for the intended, foreseeable, and ordinary uses.

136.    The three Design Defects are: (1) the FR Sleeve's design allows the continuous filament fibers to break. Once the continuous fibers of the FR Sleeve break then the FR Sleeves lose their fire-retardant capabilities required by 16 C.F.R. § 1633. Also, the broken fibers easily disperse from the FR Sleeves into the surrounding environment causing personal injuries and/or property damage; (2) the inexpensive, porous Outer Cover allows the broken fibers to migrate through the Outer Cover releasing into the surrounding environment causing personal injuries and/or property damage; and, (3) the Outer Cover is equipped with a zipper inviting the user to remove it which allows the broken fibers to release into the surrounding environment causing personal injuries and/or property damage.

137.    After Zinus designed, manufactured, sold, and distributed the Affected Mattresses, they reached consumers and users without substantial change to the condition and

nature of the products. Zinus made the Affected Mattresses pursuant to their own formulas, research, design specifications, and testing.

138.    Zinus, with knowledge of the risks associated with glass fibers, failed to use reasonable care in the design of the Affected Mattresses.

139.    The Defects in the Affected Mattresses existed at the time they left Zinus' control and were known to Zinus.

140.    Reasonable safer alternatives exist and were available to Zinus at all relevant times. Thus, the risks of the Affected Mattresses outweighed the benefits.

141.    By causing glass fiber contamination and the resulting impact to Plaintiffs' health and/or property, Zinus is strictly liable.

142.    The Defects in the Affected Mattresses proximately caused and have directly resulted in the damages of which Plaintiffs complain.

## COUNT FOUR – NEGLIGENCE

143.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Classes and under the common law of negligence, as there are no material conflicts among various states' causes of action for negligence as they apply to this case.

144.    Zinus had a duty to exercise due or reasonable care in the manufacture, distribution, and use of its glass fiber-containing mattresses to avoid harm to those who would be foreseeably injured by glass fiber contamination.

145.    Zinus knew or should have known that there was a serious risk that the Affected Mattresses could release or discharge glass fibers into an environment that would lead to contamination likely causing injures and/or property damage.

146.    By failing to exercise due care in the design, manufacturing, marketing, testing, promotion of its glass fiber-containing mattresses, Zinus breached its duty to avoid harm to Plaintiffs.

147.    Zinus failed to share, publish, or otherwise expose their internal testing and knowledge of the adverse effects of glass fiber exposure to humans and property. Zinus also intentionally, recklessly, and without regard for human safety and property, suppressed, obfuscated, minimized, and otherwise misrepresented the facts they had with regard to its glass fiber-containing mattresses and the high mobility glass fibers pose once released into an environment. Zinus not only negligently failed to inform the public and Plaintiffs of same, but, at various times, failed to warn retailers of the Affected Mattresses. The failure to warn and deceptive conduct of Zinus, as to the public, Plaintiffs, and retailers, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against Zinus for failure to warn.

148.    By negligently causing glass fiber contamination and the resulting impact to Plaintiffs' health and/or property, Zinus is liable to Plaintiffs.

149.    As a result of Zinus' negligence, Plaintiffs have incurred, and will continue to incur, investigation, cleanup, remediation, abatement, and removal costs and damages related to glass fiber contamination.

150.    Zinus' acts were willful, wanton, or reckless and conducted with a reckless indifference to Plaintiffs' rights.

151. As a direct and proximate result of Zinus' actions and omissions, Plaintiffs have suffered and continue to suffer damages.

**COUNT FIVE— VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.***

152. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

153. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

154. The UCL imposes strict liability. Plaintiffs need not prove that Zinus intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

155. During its businesses, trades, and commerce, Zinus knowingly and intentionally took misleading, false, or deceptive acts in violation of the UCL. Zinus misrepresented, willfully failed to disclose, and actively concealed the dangerous Defects in the Affected Mattresses as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Zinus also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of material facts with intent that consumers rely upon such misrepresentations, concealment, suppression, or omission, in connection with the sale of Affected Mattresses. Zinus is liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the UCL.

156. Zinus knew of Affected Mattresses' Defects since at least early 2015. Zinus concealed and suppressed material facts regarding the Affected Mattresses and made affirmative

misrepresentations regarding the Affected Mattresses. As set out above, the concealed and suppressed material facts include all aspects of the nature of, and threat posed by, Defects, which were well known to Zinus since at least early 2015. The affirmative misrepresentations include, but are not limited to:

a. Zinus' representation that "All of our mattresses have been tested and meet the requirements of the Cigarette Smoldering Test (16 CFR Part 1632) and the Open Flame Test (1633-Federal flammability)."[43]

b. Zinus placed a tag on all the Affected Mattresses stating the mattress complied with 16 C.F.R. § 1633 when it did not because the continuous fibers of the FR Sleeve break.

c. Zinus' representations that it is "impossible" for glass fibers to release from the Affected Mattresses without removing the Outer Cover.

d. Zinus' misrepresentation that "[o]ur mattresses are self-contained wonder delivery systems! Removing the mattress cover could jeopardize that system. The mattress cover isn't washable, and removing it could inhibit the fire safety barrier, so please always leave the cover on."[44]

e. Zinus' misrepresentation that "[w]e know there are so many chemicals in fire retardants, so we've created a chemical-free fire barrier in every mattress. So you can sleep without nightmares of fires or weird fire-stopping chemicals."[45]

---

[43] Amazon, *How do I know a Zinus mattress is safe? Is your foam CertiPUR-US® certified*, https://support.zinus.com/hc/en-us/articles/360000223172-How-do-I-know-a-Zinus-mattress-is-safe-Is-your-foam-CertiPUR-US-certified- (last visited June 3, 2020).
[44] Amazon, *Can I wash my Zinus mattress cover?*, https://support.zinus.com/hc/en-us/articles/360000223232-Can-I-wash-my-Zinus-mattress-cover- (last visited June 3, 2020).
[45] Amazon, *Do Zinus mattresses contain fire retardants?*, https://support.zinus.com/hc/en-us/articles/360000235651-Do-Zinus-mattresses-contain-fire-retardants- (last visited June 3, 2020).

157.    Further, for example, as early as 2015 and through the present, Zinus concealed, suppressed, and failed to disclose material facts related to the Defects in public statements and communications that were designed and intended by Zinus to reach Plaintiffs and the Class members. Zinus made, and continues to make, public statements touting the safety and quality of the Affected Mattresses but omitting any mention of the existence of the Defects, or their nature, extent, or severity.

*"Unfair" Prong*

158.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

159.    Zinus' actions constitute "unfair" business practices because Plaintiffs and Class Members are substantially harmed by Zinus' concealment of the dangerous condition of their products while profiting from the purchases they induced from Plaintiffs and the Class Members.

*"Fraudulent" Prong*

160.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

161.    Zinus' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiffs and are highly likely to deceive members of the consuming public. Plaintiffs relied on Zinus' fraudulent and deceptive representations regarding the Affected Mattresses. These misrepresentations played a substantial role in Plaintiffs' decision to purchase those products at steep discounts, and Plaintiffs would not have purchased those products without Zinus' misrepresentations.

162.    The harm to Plaintiffs and Class members outweighs the utility of Zinus' practices. There were reasonably available alternatives to further Zinus' legitimate business interests other than the misleading and deceptive conduct described herein.

163.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

***"Unlawful" Prong***

164.    Zinus' acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law in connection with their concealment of the dangerous nature of the Affected Mattresses. The Federal Trade Commission's Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the Federal Trade Commission, schemes to hide dangerous conditions, similar to the ones implemented by Zinus, are deceptive practices that would violate the FTCA. Zinus also placed a tag on all the Affected Mattresses falsely stating the Affected Mattresses complied with 16 C.F.R. § 1633 when it did not because the continuous fibers of the FR Sleeve break.

165.    In addition to federal law, California law also prohibits Zinus' practices. As detailed in Plaintiffs' subsequent Cause of Action below, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA"), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised."

166.    The violation of any law constitutes an "unlawful" business practice under the UCL. As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, 16 C.F.R. § 1633, the FAL, and the CLRA.

167.    Zinus' practices, as set forth above, have misled Plaintiffs, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Zinus' practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

168.    Zinus' violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing dangerous products based false and misleading information. These deceptions lead to financial damage for consumers like Plaintiffs and the Class.

169.    Pursuant to the UCL, Plaintiffs and the Class are entitled to preliminary and permanent injunctive relief and order Zinus to cease this unfair competition, as well as disgorgement and restitution to Plaintiffs and the Class of all Zinus' revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

**COUNT SIX— VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL") CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ.***

170.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

171.    Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…"

172.    The "intent" required by Section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

173.    Similarly, this section provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price…within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

174.    Zinus' routine concealment of misleading statements regarding the dangerous, and unlawful nature of the Affected Mattresses was an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression that the products were safer than they actually were; therefore, leading to the false impression that the products were worth more than they actually were.

175.    Zinus had a duty to disclose the Defects because:

a. Zinus had exclusive and/or far superior knowledge and access to the facts related to the Defects, and these facts were not: (1) known to Plaintiffs and the Class members; (2) reasonably discoverable by Plaintiffs and the Class members through ordinary or due diligence; and/or (3) within the fair and reasonable reach of Plaintiffs and the Class members;

b. Plaintiffs and Class members trusted and placed confidence in Zinus to inform them of safety issues related to the Affected Mattresses;

c. Zinus was in a position of influence and superiority over Plaintiffs and the Class members because Zinus designed and manufactured the Affected Mattress, and Zinus possessed technical expertise and information that Plaintiffs and the Class members lacked; and

d. Zinus made incomplete representations about the safety and reliability of the

Affected Mattresses, while purposefully withholding material facts from Plaintiffs

and the Class members that contradicted these representations.

176.     Zinus misled consumers by making untrue and misleading statements and failing

to disclose what is required as stated in the Code alleged above.

177.     As a direct and proximate result of Zinus' misleading and false advertisements,

Plaintiffs and Class members have suffered injury in fact and have lost money. As such,

Plaintiffs request that this Court order Zinus to restore this money to Plaintiffs and all Class

members, and to enjoin Zinus from continuing these unfair practices in violation of the UCL in

the future. Otherwise, Plaintiffs, Class members, and the broader general public, will be

irreparably harmed and/or denied an effective and complete remedy.

### COUNT SEVEN—VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT ("CLRA"), CALIFORNIA CIVIL CODE § 1750, *ET SEQ.*

178.     Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing

paragraphs of this Complaint as if they were set forth fully herein.

179.     This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, *et*

*seq*. Plaintiffs and each member of the proposed Class are "consumers" as defined by Cal. Civ.

Code § 1761(d). Zinus' sale of the Affected Mattresses to Plaintiffs and the Class were

"transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by

Plaintiffs and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

180.     Through its conduct discussed above, Zinus violated and continues to violate the

CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in

transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of the online merchandise:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have. ((a)(5))

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. ((a)(7))

c. Advertising goods or services with intent not to sell them as advertised. ((a)(9))

d. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. ((a)(16))

181.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

182.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the CLRA.

183.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to California customers is an unfair and deceptive act or practice prohibited by the CLRA.

184.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiffs and Class members, to their detriment.

185.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

186.    Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiffs and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

187.    Zinus intended to deceive and be unfair to Plaintiffs and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

188.    Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

189.    The safety and compliance of the Affected Mattresses were material to Plaintiffs and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

190.    The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

191.    As a direct and proximate result of the foregoing, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

192.    Consistent with § 1782(a) of the CLRA, months ago Plaintiffs' counsel notified Zinus of its conduct violating particular violations of § 1770 of the CLRA and demanded that it

rectify the problems associated with the actions detailed above and give notice to all affected consumers of Zinus' intent to act.

193.    To date Zinus has failed to agree to rectify the problems associated with the actions detailed herein and failed to give notice to all affected consumers within 30 days of the date of written notice.

## COUNT EIGHT – UNJUST ENRICHMENT

194.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Classes.

195.    Plaintiffs and the Class members bring this claim to recover the amounts by which Zinus was unjustly enriched by virtue of their tortious or fraudulent conduct.

196.    Plaintiffs bring this claim on behalf of the Classes against Zinus under the various States' law of unjust enrichment.

197.    Plaintiffs and the Class members conferred benefits on Zinus. Zinus received a benefit through their unjust conduct by selling the Affected Mattresses, which share the Defects. Plaintiffs and the Class members overpaid for the Affected Mattresses.

198.    It is inequitable for Zinus to retain these benefits.

199.    Plaintiffs and the Class Members do not have an adequate remedy at law.

200.    As a result of Zinus' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

## COUNT NINE – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

201.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

202.    The Class Plaintiffs bring this Count against Zinus on behalf of members of the Classes.

203.    Zinus is and was at all relevant times a "merchant" with respect to the Affected Mattresses.

204.    Zinus impliedly warranted that the Affected Mattresses were in merchantable condition when Plaintiffs and the Class members purchased their Affected Mattresses. As part of the implied warranty of merchantability, Zinus warranted that the Affected Mattresses were fit for their ordinary purposes as mattresses, in safe condition, and substantially free from defects.

205.    The Affected Mattresses, when sold, and at all times, thereafter, were not merchantable and were unfit for the ordinary purposes for which mattresses are used. All Affected Mattresses suffer from Defects.

206.    The design defects make the Affected Mattresses unsafe by, without limitation, allowing glass fibers to release from the Affected Mattresses potentially causing serious injuries and/or property damage.

207.    These dangerous defects existed at the time the mattresses left Zinus' manufacturing facilities and at the time they were sold to Plaintiffs and the Class members.

208.    The defective Affected Mattresses caused injury and/or property damage to Plaintiffs and the Class members.

209.    Plaintiffs and the Class members have had sufficient direct dealings with either Zinus or its agents to establish privity of contract.

210.    Plaintiffs and the Class members were not required to provide direct notice of their allegations of breach of implied warranty to Zinus because Zinus had actual knowledge of the design defects and their breaches of the implied warranties. Moreover, Plaintiffs and the

Class members were not required to give prior notice to Zinus because Zinus was reasonably notified by the filing of the Class Action Complaint. Alternatively, Zinus has actively defended litigation in other federal districts in which they were put on notice of the alleged defects and resulting injuries, thereby providing adequate pre-suit notice.

211.   As a direct and proximate result of Zinus' breach of the warranties of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

212.   Plaintiffs and the Class members also seek available equitable and/or injunctive relief.

213.   Based on Zinus' continuing failures to fix the known dangerous Defects, Plaintiffs and the Class members seek: a declaration that Zinus has not remedied the Defects.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, on behalf of their minor children, and on behalf of the Classes as defined herein, respectfully requests that this Court enter a judgment against Zinus and in favor of Plaintiffs, their minor children, and the Classes, and grant the following relief:

A.   Determine that this action may be maintained and certified as a class action on a nationwide basis under Rule 23(b)(1), 23(b)(2) and/or 23(b)(3); or alternatively, certify all questions, issues and claims that are appropriately certified under 23(c)(4); and that it designate and appoint Plaintiffs as Class Representatives, and appoint Class Counsel under Rule 23(g);

B.   Enter judgment finding Zinus liable for all costs and damages incurred by Plaintiffs, including but not limited to prior, interim and future capital as well as operation and

maintenance costs related to glass fiber contamination; including the reasonable costs of investigations and remediation, and losses resulting from glass fiber contamination;

C.      A declaration that the Affected Mattresses are defective as described herein.

D.      Enter judgment finding Zinus liable for punitive damages;

E.      Enter judgment finding Zinus liable for consequential damages;

F.      Enter judgment requiring, via injunction, Zinus stop manufacturing and or selling the Affected Mattresses in the United States;

G.      Award Plaintiffs costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law;

H.      A declaration that these defects are safety-related;

I.      A declaration that Zinus be financially responsible for notifying all Class members of the Defects present in the Affected Mattresses;

J.      An order requiring Zinus to desist from further deceptive distribution and sales practices with respect to the Affected Mattresses;

K.      An order requiring Defendant to pay Plaintiffs statutory damages under the various state statutes pled above;

L.      An award of punitive damages and/or treble the amount of damages;

M.      Awarding restitution and disgorgement of all profits and unjust enrichment that Zinus obtained from Plaintiffs and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

N.      Award Plaintiffs and Class members restitution and/or disgorgement of Zinus' ill-gotten gains for the conduct described in this Complaint;

O.      An order enjoining Defendant from making any further false or misleading statements to Plaintiffs and members of the Class and or Subclasses, and other appropriate relief regarding the marketing of this product;

P.      Award Plaintiffs and Class members pre-judgment and post-judgment interest;

Q.      Leave to amend this Complaint to conform to the evidence discovered; and,

R.      Award Plaintiffs and Class members such other relief as the case may require; or as determined to be just, equitable, and proper by this Court.

## DEMAND FOR JURY TRIAL

214.    Plaintiffs hereby demand a jury trial for all of the claims so triable.

Dated this July 7, 2022,

/s/ Daniel B. Snyder

Daniel B. Snyder
   (CA Bar No. 207824)
Gregory A. Cade
   (subject to pro hac admission)
Kevin B. McKie
   (subject to pro hac admission)
Gary Anderson (subject to pro hac
   admission)
ENVIRONMENTAL LITIGATION
   GROUP PC
2160 Highland Ave S, Ste 200
Birmingham, AL 35205
T: (205) 328-9200
F: (205) 328-9456
dsnyder@elglaw.com
GregC@elglaw.com
kmckie@elglaw.com
Gary@elglaw.com


Christopher Cueto
   (subject to pro hac admission)
Lloyd M. Cueto
   (subject to pro hac admission)
James E. Radcliffe
   (subject to pro hac admission)
LAW OFFICE OF CHRISTOPHER
   CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
ccueto@cuetolaw.com
cmcueto@cuetolaw.com
jradcliffe@cuetolaw.com


Attorneys for Plaintiffs